IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CONLIN ENTERPRISE CORP, a Utah Corporation, and J. TYLER CONLIN, an Individual,<br><br>Plaintiffs,<br><br>vs.<br><br>SNEWS LLC, a California LLC, MICHAEL HODGSON, an Individual, and THERESE IKNOIAN, and individual,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS and DENYING PLAINTIFFS' MOTION TO CONTINUE CONSIDERATION OF MOTION TO DISMISS**<br><br>Case No: 2 07 cv 922<br><br>Magistrate Judge David Nuffer |

Defendants' Motion to Dismiss[1] and Plaintiffs' Motion to Continue Consideration of Motion to Dismiss[2] are before this Court. The Court has reviewed the motions, memoranda and relevant legal authorities. For the reasons set forth below, Defendants' Motion to Dismiss is GRANTED IN PART and Plaintiffs' Motion to Continue Consideration of Motion to Dismiss is DENIED.

## INTRODUCTION

Defendant SNEWS LLC (SNEWS) is a California LLC that publishes an online trade newsletter for the outdoor recreation and fitness industries.[3] SNEWS has approximately 5,000 subscribers worldwide, approximately 60 of whom reside in Utah.[4] The only thing that can be

---

[1] Defendants' Motion to Dismiss (Motion to Dismiss), docket no. 5, filed December 5, 2007
[2] Plaintiffs' Motion to Continue Consideration of Motion to Dismiss, docket no. 21, filed February 8, 2008.
[3] Complaint in the Utah Third District Court (Complaint), 1, attached as Exhibit B to Motion to Dismiss; Motion to Dismiss, 4.
[4] Declaration of Michael Hodgson in Support of Motion to Dismiss ¶ 2 (1st Hodgson Declaration), attached as Exhibit A to Motion to Dismiss.

bought on the SNEWS website is a subscription to the online trade newsletter.[5] SNEWS has no Utah employees, no place of business in Utah, no Utah bank accounts, no Utah phone or fax numbers, no Utah mailing address, and no Utah agents.[6] Defendants Michael Hodgson (Hodgson) and Therese Iknoian (Iknoian), both California residents,[7] were officers acting on behalf of SNEWS at the time of the actions giving rise to the Complaint.[8]

On or about March 26, 2007, Hodgson and Iknoian posted an article on the SNEWS website entitled "Utah Turning into eBay Connection as GotYourGear Unmasked."[9] The article (Article) discussed eBay sports gear transactions for the eBay store GotYourGear.[10] The Article alleged that GotYourGear was the online alias for Inland Sports, a Layton, Utah sporting goods store owned by Plaintiff J. Tyler Conlin (Conlin).[11] It further alleged that Conlin was selling name brand vendor goods online through GotYourGear in violation of Inland Sports dealer agreements with vendors.[12]

Conlin alleges that the Article harmed him by causing some vendors to cease doing business with him, resulting in a loss of over $100,000 per month, and by causing damage to his reputation.[13] Conlin sent a letter demanding retraction, which SNEWS apparently did not answer.[14]

Conlin, a Utah resident, and Conlin Enterprises Corp, a Utah corporation,[15] filed suit in the Utah Third District Court on September 27, 2007 asserting three claims against the

---

[5] *Id.*
[6] *Id.* at ¶¶ 3-4.
[7] Motion to Dismiss, 2.
[8] Complaint, 1-2; Motion to Dismiss, 2.
[9] Complaint, 2.
[10] SNEWS Article (Article), attached as part of Exhibit A to Complaint.
[11] *Id.*
[12] *Id.*
[13] Complaint, 3-4.
[14] Id. at 2.
[15] *Id.* at 1.

Defendants: (1) defamation; (2) intentional and negligent interference with present and future business relationships; and (3) civil conspiracy between SNEWS, Hodgson, and Iknoian.[16] Plaintiffs attempted to serve Defendants by mailing a copy of the original complaint and summons to Hodgson's mailbox in California via a private mail service used by Defendants (no return receipt requested).[17]

Defendants removed the case to this Court on November 27, 2007.[18]

On December 5, 2007, Defendants filed this Motion to Dismiss, arguing that (1) Plaintiffs' complaint should be dismissed for lack of personal jurisdiction; (2) if Defendants are subject to personal jurisdiction in Utah, this case should either be dismissed for improper venue or transferred to the Eastern District Court of California; and (3) if this Court has jurisdiction over the Defendants, the Plaintiffs' conspiracy claim should be dismissed for failure to state a claim upon which relief can be granted.[19]

Defendants note that the Motion to Dismiss mentioned that Hodgson and Iknoian annually attend the Outdoor Retailer trade show (Show) in Salt Lake City, which was scheduled for January 23-26, 2008.[20] Plaintiffs' opposition to the Motion to Dismiss was due December 20, 2007, but on December 21, 2007, Plaintiffs requested and received a stipulation to extend the time to file their opposition papers on January 4, 2008.[21] On January 3, 2008, Plaintiffs requested and received another such extension, making their papers due on January 11, 2008.[22] They then filed another such motion on January 11, 2008, giving them until January 18, 2008 to

---

[16] *Id.* at 4-7.
[17] Motion to Dismiss, 3; Defendants' Reply to Plaintiff's Opposition to Motion to Dismiss and Opposition to Plaintiff's "Suggestion of Mootness" (Reply), 4, docket no. 18, filed January 30, 2008.
[18] Reply, 4; Notice of Removal from Third District Court, docket no. 1, filed November 28, 2007.
[19] Motion to Dismiss, 5-13.
[20] Reply, 5.
[21] *Id.*
[22] *Id.*

3

file their opposition papers.[23] Having exhausted their available extensions,[24] Plaintiffs filed their six page opposition memorandum on January 18, 2008,[25] and Defendants' reply papers were then due January 30, 2008.[26]

In December 2007, SNEWS assets were sold to Active Interest Media, Inc. (AIM), a California Corporation, in an asset-only transaction.[27]

One week after Plaintiffs filed their opposition papers, on January 25, 2008, Mr. Hodgson was in Salt Lake City attending the Show, purportedly in his capacity as a representative of AIM, not as an officer of SNEWS.[28] While Hodgson was at the Show, Plaintiffs attempted to serve him individually and in his capacity as an officer of SNEWS.[29] Following this service of process, Plaintiffs filed a Suggestion of Mootness suggesting that Defendants' allegation that this Court lacks personal jurisdiction is moot as regards SNEWS and Hodgson.[30]

This Court finds that (1) Defendants Hodgson and SNEWS were properly served with process; (2) this Court has personal jurisdiction over Defendants Hodgson and SNEWS; (3) Plaintiffs' Motion to Continue Consideration of Motion to Dismiss is unnecessary in light of finding (2); (4) venue is proper in Utah; and (5) Plaintiffs' civil conspiracy claim is dismissed as a matter of law.

---

[23] *Id*.
[24] Fed. R. Civ. P. 4(m) states that if a defendant is not served within 120 days after the complaint is filed, the court must dismiss the action. January 25, 2008 was exactly 120 days after the complaint was filed. Reply, 2, 6.
[25] Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss (Memo in Opposition), docket no. 16, filed January 18, 2008.
[26] Reply, 6.
[27] Reply, 9; Declaration of Michael Hodgson in Support of Reply to Plaintiffs' Opposition to Motion to Dismiss and in Opposition to Plaintiffs' Suggestion of Mootness (2d Hodgson Declaration), ¶ 2, attached as Exhibit A to Reply.
[28] Reply, 9; 2d Hodgson Declaration, ¶ 3.
[29] Reply 5, 9; Suggestion of Mootness, 2, docket no. 17, filed January 29, 2008; 2d Hodgson Declaration, ¶ 1..
[30] Suggestion of Mootness, 1.

## DISCUSSION

### Personal Jurisdiction over the Defendants

There are two requirements that must be met in order for personal jurisdiction to properly be exercised over the Defendants in this diversity case. First, service of process must be properly perfected. Second, the Defendants must have sufficient contacts with Utah to establish either general or specific in personam jurisdiction. This Court finds that process was properly served upon Defendant Hodgson and SNEWS, and that both of these defendants had sufficient contacts with Utah to establish specific in personam jurisdiction.

<u>Service of Process</u>

*First attempted service*

The effectiveness or validity of service of process is analyzed under state law.[31] Under Utah law, a complaint can only be served upon an individual or an entity by mail if "the defendant signs a document indicating receipt."[32] These Defendants were unable to perfect the service because Plaintiffs mailed a copy of the summons and complaint to Defendants via a mail service that did not provide a return receipt option.[33]

Plaintiffs first responded that the validity of service of process "is not properly before the Court,"[34] stating (without reference to any legal authority) that "[i]nsufficiency of service is not a basis for the dismissal of a Complaint," and suggesting that Defendants "file a Motion to Quash

---

[31] Fed. R. Civ. P. 4(e),(h) (noting that service upon individuals or corporations, partnership, or associations can be effected "following state law for serving a summons . . . in the state where the district court is located."). *See also Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995) (stating that "to obtain jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state *and* that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment.").

[32] Utah R. Civ. P. 4(d)(2)(A), (B).

[33] Motion to Dismiss, 3; Reply, 4.

[34] Memo in Opposition, 5.

Service."[35] However, Federal Rule of Civil Procedure 12(b)(5) permits a motion to dismiss on the ground of insufficiency of service of process.[36] Furthermore, Defendants cite *Smith v. Belmore*, which rejected a motion to quash, noting that "the motion to dismiss on the ground of insufficiency of process is the proper procedure."[37]

Because Defendants did not sign a document indicating receipt of service, the first service of process was not perfected.

*Second attempted service*

At literally the last moment, Plaintiffs served a summons and complaint on Hodgson when he was in Salt Lake City attending the Show. This service affects each Defendant differently.

### 1. Therese Iknoian

Defendant Therese Iknoian was not at the Show, so the second service does not reach her. Both the first service and the second service failed to properly serve Iknoian, but under Rule 4(m) of the Federal Rules of Civil Procedure, a court may either dismiss the action against the defendant or order that service be made within a specified time.[38] Plaintiff is hereby ordered to serve Therese Iknoian with process on or before May 22, 2008.

### 2. Michael Hodgson

Hodgson does not contend that he was improperly served, but he argues that this Court should exercise its discretion and decline to exercise personal jurisdiction because it "would be judicially inefficient because the parties would be subject to different courts' jurisdictions."[39] However, since Ms. Iknoian may soon be properly served, and because, as discussed below, this

---

[35] *Id.*
[36] Fed. R. Civ. P. 12(b)(5).
[37] *Smith v. Belmore*, 1 F.R.D. 633, 634 (E.D. Wash. 1941).
[38] Fed. R. Civ. P. 4(m).
[39] Reply, 9.

Court finds that SNEWS is subject to jurisdiction in this Court, Hodgson's efficiency argument is vitiated. Service upon Hodgson was proper.

### 3. SNEWS LLC

Plaintiffs cite *Burnham v. Superior Court*[40] for their contention that service upon Hogdson was sufficient to confer personal jurisdiction over SNEWS.[41] However, the Court in *Burnham* explicitly declined to address whether its holding applied to corporate entities.[42] In *MBM Fisheries, Inc. v. Bollinger Machine Shop & Shipyard, Inc.*,[43] a corporate defendant with minimal contacts with Washington state challenged service made upon the corporation's Vice President when attending a trade show in Washington.[44] The court declined to exercise jurisdiction over the corporate defendant and noted that

> [T]he nonresident defendant in *Burnham* was a natural person. Whether or not a nonresident natural person may be subject to the jurisdiction of this state by virtue of his or her mere presence in Washington, . . . service of process on an agent of a nonresident corporation who is merely "present" in Washington does not, without more, comport with due process.[45]

Defendants next argue that under Utah law, a foreign defendant corporation must be "transacting business" in Utah in order for service upon an officer of the corporation to effectively reach the corporation.[46] Defendants cite *Western Gas Appliances v. Servel*,[47] which stated that "[i]t is indisputable that the mere presence here of an officer of a foreign corporation

---

[40] 495 U.S. 604 (1990).
[41] Suggestion of Mootness, 2.
[42] *Burnham*, 495 U.S. at 610 n.1 (noting that "[C]orporations . . . have never fitted comfortably in a jurisdictional regime based primarily upon 'de facto power over the defendant's person. We express no views on these matters- and, for simplicity's sake, omit reference to this aspect of 'contacts'-based jurisdiction in our discussion.") (internal citations omitted).
[43] 804 P.2d 627 (Wash. App. 1991).
[44] *MBM Fisheries*, 804 P.2d at 630.
[45] *Id*. at 631 n.3.
[46] Reply, 6-7.
[47] *Western Gas Appliances v. Servel, Inc.*, 257 P.2d 950 (Utah 1953).

will not subject it to suit."[48]  Under *Servel*, Plaintiffs have the burden of affirmatively showing that Defendants were doing business in the state.[49]

*Servel* applies and interprets an older version of the Utah Rule of Civil Procedure concerning service upon a corporation, which at that time permitted service upon a corporation "[i]f no . . . officer or agent [of the corporation] can be found in the state, and the defendant . . . does business in this state, then upon the person doing such business . . . ."[50]  However, the current Utah Rule of Civil Procedure 4(d)(1)(E), which addresses service on corporations, has been amended since *Servel*.  The Rule now provides that if the defendant corporation "has, or advertises or holds itself out as having, an office or place of business within the state *or elsewhere*, or does business within this state *or elsewhere*, then [service may be made] upon the person in charge of such office or place of business."[51]  The Rule no longer requires that service be accomplished at an office or place of business within this state.  If an entity is doing business in this state, then a person with authority in that organization may be served – at any place – and thus service is properly made on the corporation.  The revised Rule recognizes the current insignificance of a physical place of business, and the ability to conduct business in this state without any presence here.  Under the revised Rule, a person with authority to act for a business may be served wherever found.

Despite the absence of SNEWS traditional business operation elements in Utah, Hodgson's attendance at the Show purportedly as a representative of AIM,[52] and Defendants'

---

[48] *Id.* at 953 (citing *St. Clair v. Cox*, 106 U.S. 350 (1882)).
[49] *Servel*, 257 P.2d at 952 (citing *Mayer v. Wright*, 15 N.W.2d 268, 270 (Iowa 1944)).
[50] *Servel*, 257 P.2d at 951 (citing Utah R. Civ. P. 4(e)(4); Utah Code Ann. § 31-5-16 (1953)).
[51] Utah R. Civ. P. 4(d)(1)(E) (emphasis added).
[52] The Court recognizes that federal courts have, in other instances, interpreted "agent of such corporation within the state" as including both that the corporation be engaged in business in the state, and that the agent be appointed to act there.  *See, e.g., St. Clair v. Cox*, 106 U.S 354, 360-61 (1882).  However, those cases dealt with state service of process rules that did not include a provision allowing service upon corporations doing business "elsewhere," which is the distinguishing trait of Utah Rule of Civil Procedure 4(d)(1)(E).

contention that the SNEWS website was a purely passive website, the Utah Rules of Civil Procedure establish that service of process on SNEWS was effectuated at the Show. Because SNEWS is doing business in California, service upon Hodgson is effective service upon SNEWS.

In Personam Jurisdiction

The Court agrees with Defendants' contention that "although SNEWS may have been served in compliance with Rule 4(d)(1)(E), that service does not automatically confer jurisdiction."[53] As process upon Defendants Hodgson and SNEWS was served properly, Plaintiffs still have the burden of showing that Defendants are subject to either general or specific personal jurisdiction in Utah by virtue of their contacts with Utah. Plaintiffs argue that this court can exercise specific jurisdiction over Defendants, and after a review of the relevant case law, the Court agrees.

Specific personal jurisdiction arises when (1) a non-resident defendant purposefully establishes minimum contacts with the forum state, (2) the cause of action arises out of those contacts, and (3) jurisdiction is reasonable under the due process clause of the Constitution.[54] The Court finds that Defendants satisfied these requirements sufficient for the Court to exercise personal jurisdiction.

*Minimum Contacts with Utah*

The minimum contacts requirement goes to "the foreseeability . . . that the defendant's conduct and connection with the forum State are such that he should reasonably expect to be haled into court there."[55] This protects defendants from being subject to a foreign jurisdiction

---

[53] Defendants' Supplemental Memorandum Regarding Rule 4(d)(1)(E), 2, docket no. 28, filed March 7, 2008.
[54] *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 476-77 (1985).
[55] *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980).

based on "random, fortuitous or attenuated" contacts.[56]  The issue is whether Defendants' contacts with Utah were purposely established sufficient that it was foreseeable that they could be haled into court in Utah.  Because Hodgson and Iknoian's contacts with Utah occurred in their capacity as officers of SNEWS and were effectuated through the SNEWS website, the analysis for all of the Defendants is the same.

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*[57] established a "sliding scale"[58] test to evaluate a defendant's contacts with a forum state when the defendant's only contacts are through a website.  The test outlines three basic designations for contacts with the forum state:

**Clearly Doing Business** – "If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper."[59]

**The Middle Ground** – "occupied by interactive Web sites where a user can exchange information with the host computer.  In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site."[60]

**Passive Website** – "situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions . . . [D]oes little more than make information available to those who are interested in it, [so] it is not grounds for the exercise personal jurisdiction."[61]

---

[56] *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984).
[57] 952 F.Supp. 1119 (W.D. Pa. 1997).
[58] *Zippo*, 952 F. Supp at 1124.
[59] *Id.*
[60] *Id.*
[61] *Id.*

10

Defendants argue that SNEWS is a purely passive website because "merchandise is not bought and sold on the site, orders are not taken, products are not shipped, and no commercial transactions are performed except for subscription sales."[62] They assert that the online newsletter simply "post[s] information on an Internet Web site which is accessible to users in foreign jurisdictions."[63] They argue in the alternative that SNEWS is merely in the "middle ground" because "[t]he level of interactivity is minor, and none of it is commercial."[64] They also cite to *iAccess, Inc. v. WEBcard Technologies, Inc.*, a case in this Court, to argue that SNEWS did not purposefully establish minimum contacts because SNEWS did not "engage[] in activity that is expressly aimed or intentionally directed at Utah residents."[65] Conversely, Plaintiffs, after abandoning their first argument that *Zippo* does not apply to this case,[66] argue that SNEWS falls under the first category as a company clearly doing business, and thus subject to jurisdiction in this Court under the Utah long-arm statute.[67]

Application of the rules in *Zippo* and *iAccess* in fact shows that SNEWS falls into the first category of clearly doing business in Utah. Although Defendants argue that SNEWS did not engage in any commercial transactions on their website,[68] SNEWS engaged in at least sixty commercial transactions in Utah when individuals subscribed to the SNEWS newsletter. New subscribers pay with a credit card and receive a password that provides access to the news material and blog capabilities on the SNEWS Website.[69] It is irrelevant that SNEWS does not buy or sell other merchandise on the Website. Selling subscriptions to the newsletter is a commercial transaction.

---

[62] Motion to Dismiss, 7.
[63] *Id.* (quoting *Zippo*, 952 F. Supp at 1124).
[64] Motion to Dismiss, 7.
[65] *iAccess, Inc. v. WEBcard Techs., Inc.*, 182 F. Supp. 2d 1183, 1186 (D. Utah 2002).
[66] Memo in Opposition, 4.
[67] Plaintiffs' Sur-Reply in Opposition to Motion to Dismiss (Sur-Reply), 3-9, docket no. 20, filed February 8, 2008.
[68] Motion to Dismiss, 7.
[69] 1st Hodgson Declaration ¶ 2.

Dot Com, the defendant corporation in *Zippo*, had no offices, employees, agents, or internet servers in the forum state. Dot Com is just like SNEWS in those respects. Dot Com's only contacts with the forum state occurred when forum state residents subscribed to an online membership to receive internet newsgroup messages. Subscribers paid by credit card and were assigned a password to allow them access to the online messages. The court noted that

> Dot Com has not just posted information on a Web site that is accessible to Pennsylvania residents who are connected to the Internet. This is not even an interactivity case. . . . Dot Com has done more than create an interactive Web site through which it exchanges information with Pennsylvania residents . . . . We are not being asked to determine whether Dot Com's Web site alone constitutes the purposeful availment of doing business in Pennsylvania. This is a 'doing business over the Internet' case . . . . We are being asked to determine whether Dot Com's conducting of electronic commerce with Pennsylvania residents constitutes the purposeful availment of doing business in Pennsylvania. We conclude that it does.[70]

Like Dot Com, SNEWS has not just posted information on a Web site that is accessible to Utah residents connected to the Internet, and SNEWS has done more than create an interactive Web site through which it exchanges information with Utah residents. Indeed, like Dot Com, SNEWS has "contracted with approximately [sixty] individuals . . . in [Utah]. The intended object of these transactions has been the downloading of the electronic messages that form the basis of this suit in [Utah]."[71] This is doing business in the forum state

Also like Dot Com, "the fact that [SNEWS's] services have been consumed in [Utah] is not 'fortuitous' within the meaning of *World-Wide Volkswagen*."[72] This is because "[SNEWS] repeatedly and consciously chose to process [Utah] residents' applications and to assign them passwords. [SNEWS] knew that the result of these contracts would be the transmission of

---

[70] *Zippo*, 952 F. Supp. at 1125-26.
[71] *Id*. at 1126.
[72] *Id*.

12

electronic messages into [Utah]. The transmission of these files was entirely within its control."[73] SNEWS "was under no obligation to sell its services to [Utah] residents. . . . If [SNEWS] had not wanted to be amenable to jurisdiction in [Utah], the solution would have been simple – it could have chosen not to sell its services to [Utah] residents."[74]

This case is factually distinguishable from *iAccess*, which discussed a middle ground defendant that had an interactive website, but that did not allow users to purchase products. Defendants cite this case for the proposition that "[the defendant internet company] must have engaged in activity that is 'expressly aimed' or 'intentionally directed' at Utah residents."[75] However, in examining "whether the level of interactivity with Utah users and commercial nature of the exchange of information that occurs on the website makes the exercise of jurisdiction proper,"[76] the Court established that the plaintiff must show "that either [the defendant company] intentionally targeted Utah users *or* that Utah users actually interacted with [the defendant company's] website."[77]  The defendant in *iAccess* had no "'deliberate and repeated' contact with Utah through its Website,"[78] and though it made one $20.00 sale to a Utah resident, this transaction was not consummated on the Website.[79]  In contrast with the defendant in *iAccess*, SNEWS has actually consummated transactions with Utah subscribers as they interacted with its Website.

---

[73] *Id.*
[74] *Id.* at 1126-27.
[75] *iAccess*, 182 F. Supp. 2d at 1186 (internal citations omitted).
[76] *Id.* at 1187.
[77] *Id.* (emphasis added).
[78] *Id.* at 1189 (quoting *Millennium Enterprises, Inc. v. Millennium Music, LP*, 33 F. Supp. 2d 907, 921 (D. Or. 1999)).
[79] *iAccess*, 182 F. Supp. 2d at 1189.

Because SNEWS completed transactions for paid subscriptions to its online materials, this qualified as "something more"[80] than the mere existence of an interactive website sufficient to find that SNEWS was clearly doing business under *Zippo*. Therefore, Defendants had sufficient purposeful contacts with Utah to make it foreseeable that they could be haled into court in Utah.

*Cause of action arises out of those contacts*

The second prong of the personal jurisdiction analysis was not substantively addressed by either of the parties,[81] but this Court finds that the cause of action arose out of SNEWS' contacts with Utah. The cause of action includes defamation and interference with contractual relations. The relevant contacts with Utah are the Internet subscriptions through the SNEWS website. The cause of action arises out of the contacts with Utah because those Utah subscribers had access to the purportedly defamatory article. Not only is the defamatory article the source of the harm, its explicit purpose was to harm the Plaintiffs who are Utah residents. The cause of action, including the defamation and interference with contractual relations claims, arises out of Defendants' contacts with Utah.

*Jurisdiction is reasonable under the due process clause of the Constitution*

The "reasonableness" prong exists to protect defendants against unfairly inconvenient litigation,[82] and the exercise of jurisdiction is reasonable if it does not offend "traditional notions

---

[80] *GTE New Media Servs. Inc. v. BellSouth Corp.,* 199 F.3d 1343 (D.C. Cir. 2000); *Mink v. AAAA Dev. LLC,* 190 F.3d 333 (5th Cir. 1999); *Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414 (9th Cir. 1997); *Bensusan Rest. Corp. v. King,* 937 F. Supp. 295 (S.D.N.Y. 1996), *aff'd,* 126 F.3d 25 (2nd Cir. 1997); *CompuServe, Inc. v. Patterson,* 89 F.3d 1257 (6th Cir. 1996).
[81] Plaintiffs do suggest that SNEWS's subscription contracts with Utah residents "form[] the basis of plaintiffs' claims in this action," but nothing more. Sur-Reply, 6.
[82] *World-Wide Volkswagen,* 444 U.S. at 292.

of fair play and substantial justice."[83] When determining the reasonableness of a particular forum, the court must consider the burden on the defendant in light of other factors including:

> the forum state's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and effective relief, at least when that interest is not adequately protected by the plaintiff's right to choose the forum; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several states in furthering fundamental substantive social policies.[84]

Defendants have the burden to show that, in light of these factors, defending the suit in this court would be "so gravely difficult and inconvenient" that they would be at a "severe disadvantage" in comparison to the Plaintiffs.[85] Defendants have not met this burden.

Defendants argue that "fair play and substantial justice"[86] would be compromised if this Court asserted jurisdiction because they would be required to defend a lawsuit from California, undergo discovery, and potentially stand trial in Utah "simply because they operate a website and attend a trade show unrelated to the complaint."[87] But case law suggests that this is not a wholly separate legal inquiry. Rather, a determination that there are sufficient "minimum contacts" with the forum state presumes that jurisdiction will not violate "traditional notions of fair play and substantial justice."[88] Furthermore, other cases in which "fair play and substantial justice" have been compromised in the context of Internet Websites have focused on more than mere inconvenience.[89] Here, while it may be inconvenient for Defendants to defend their case in

---

[83] *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945).
[84] *World-Wide Volkswagen,* 444 U.S. at 292 (internal citations omitted).
[85] *Burger King,* 471 U.S. at 478.
[86] *Int'l Shoe,* 326 U.S. at 316..
[87] Motion to Dismiss, 10.
[88] *Int'l Shoe,* 326 U.S. at 316. *See e.g., Doe v. Nat'l Med. Servs.*, 974 F.2d 143, 146 (10th Cir. 1992) ("jurisdiction may not be asserted over a party unless that party has sufficient 'minimum contacts' with the state, *so that* the imposition of jurisdiction would not violate 'traditional notions of fair play and substantial justice'")(emphasis added); *Haas v. A.M. King Indus., Inc.*, 28 F. Supp. 2d 644, 647 (D. Utah 1998) ("personal jurisdiction may not be asserted over a party unless that party has sufficient 'minimum contacts' with the state, *so that* the imposition of jurisdiction would not violate 'traditional notions of fair play and substantial justice'")(emphasis added).
[89] *See, e.g., Drive Fin. Servs., LP v. Ginsburg*, 2007 WL 2084113, at *7 (N.D. Tex. 2007) (finding a violation of fair play and substantial justice when there was a "substantial disparity in resources" because the defendants were

Utah, other factors, such as Utah's interest in adjudicating the dispute and Plaintiffs' interest in obtaining convenient and effective relief, weigh more heavily against this concern.

Hodgson and SNEWS have sufficient minimum contacts with Utah that gave rise to the cause of action, and jurisdiction in Utah is reasonable. As Hodgson and SNEWS have, to date, been properly served with process, jurisdiction over Hodgson and SNEWS is, therefore, appropriate. When Therese Iknoian is properly served with process, jurisdiction over her will also be appropriate.

## Venue

In diversity cases, venue is proper in

(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.[90]

Because the Defendants are subject to personal jurisdiction in Utah, then venue here is proper under the third possibility.

Defendants ask the Court exercise its discretion and transfer the case to California pursuant 28 U.S.C. § 1404, which permits such a transfer "[f]or the convenience of parties and witnesses, in the interest of justice."[91] Defendants note that many of the witnesses and documentary evidence are in California, and "[c]onvenience and judicial efficiency" would be

---

unemployed and subsisted on savings); *Washington, Dep't of Revenue v. WWW.Dirtcheapcig.com, Inc.*, 260 F. Supp. 2d 1048, 1053 (W.D. Wash. 2003) (holding that there was no violation of fair play and substantial justice because the interactive website "purposefully interjected itself into Washington State"); *Mothers Against Drunk Driving v. DAMMADD, Inc.*, 2003 WL 292162, at *7 (N.D. Tex. 2003) (noting that defendant non-profit corporation in New York State with very meager budget would be put out of business if required to litigate in Texas).
[90] 28 U.S.C. § 1391.
[91] 28 U.S.C. § 1404(a) (1996).

served by litigating in California rather than in Utah.[92] Plaintiffs suggest that because the witnesses and evidence concerning the harm Plaintiffs suffered are in Utah, venue here is proper.[93]

In support of their request for transfer of venue, Defendants also note that Plaintiff Conlin agreed to a forum selection clause when he subscribed to SNEWS online,[94] but Plaintiff correctly notes that the forum selection clause explicitly applies only to disputes arising out of or relating to the terms of use.[95]

Venue in Utah is permissible, and this Court declines to exercise its discretion to transfer this case to another venue.

## Conspiracy Claim

A civil conspiracy claim requires proof of "the combination of two or more persons."[96] A corporation can only act through its employees or agents,[97] and when an employee or agent acts in the course of their employment, their acts are the acts of the corporation.[98] Since Hodgson and Iknoian were acting in the course of their employment when they wrote and published the allegedly defamatory Article, their actions were those of the SNEWS, and "there is no entity apart from the employee with whom the entity can conspire."[99] A corporation "cannot conspire with itself."[100] Plaintiffs do not dispute this argument, but only suggest that they "will

---

[92] Motion to Dismiss, 11-12.
[93] Memo in Opposition, 5.
[94] Reply, 15.
[95] Sur-Reply, 9 ("any action *arising out of or relating to these terms* shall be filed in California")(emphasis added).
[96] *World Wide Ass'n of Specialty Programs v. Pure, Inc.*, 450 F.3d 1132, 1141 (10th Cir. 2006).
[97] *Gay v. Young Men's Consol.*, 107 P.237, 240-41 (Utah 1910).
[98] *Black v. Bank of America*, 30 Cal. App. 4th 1, 6 (1994).
[99] *Id.*
[100] *Id.*

move the Court for leave to amend the Third Cause of Action of their Complaint."[101]  This claim as submitted is dismissed as a matter of law.

### Plaintiffs' Motion to Continue Consideration of Motion to Dismiss

Plaintiffs want time to discover whether Hodgson was still an officer of SNEWS at the time he was served with process at the Show.  This determination is irrelevant to the analysis in this order.  Further discovery is not necessary because service upon Hodgson was effectively service upon SNEWS, per Utah Rule of Civil Procedure 4(d)(1)(E).

### CONCLUSION AND ORDER

This Court finds that service of process upon Defendants Hodgson and SNEWS was properly perfected; that in personam jurisdiction over Defendants Hodgson and SNEWS is appropriate; and that venue in Utah is proper.  The Court further finds Plaintiffs' civil conspiracy claim insupportable as a matter of law.  Defendants' Motion to Dismiss is hereby granted as to the civil conspiracy claim, but denied as regards service of process, personal jurisdiction, and venue.  The Court finds Plaintiffs' Motion to Continue Consideration of Motion to Dismiss unnecessary as a matter of law.

---

[101] Memo in Opposition, 5.

**ORDER**

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss[102] is GRANTED IN PART, and Plaintiffs' Motion to Continue Consideration of Motion to Dismiss[103] is DENIED. IT IS FURTHER ORDERED that the time in which Plaintiff may serve Defendant Therese Iknoian with process is extended to May 22, 2008.

DATED this 22nd day of March, 2008.

BY THE COURT:

David Nuffer
United States Magistrate Judge

---

[102] Docket no. 5, filed December 5, 2007.
[103] Docket no. 21, filed February 8, 2008.